[Cite as *Fortis Fortuna Adiuvat Holdings, L.L.C. v. Massillon*, 2024-Ohio-5500.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| FORTIS FORTUNA ADIUVAT | : | JUDGES: |
| HOLDINGS, LLC, ET AL. | : | Hon. John W. Wise, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| Plaintiffs-Appellants | : | Hon. Andrew J. King, J. |
| | : | |
| -vs- | : | |
| | : | |
| CITY OF MASSILLON, OHIO | : | Case No. 2024 CA 00062 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2023 CV 00776

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      November 20, 2024

APPEARANCES:

For Plaintiffs-Appellants

BRIAN L. ZIMMERMAN
229 Third Street NW
Suite 200
Canton, OH 44702

For Defendant-Appellee

GREGORY A. BECK
BRITTANY A. BOWLAND
400 South Main Street
North Canton, OH 44720

*King, J.*

{¶ 1}  Plaintiffs-Appellants, Fortis Fortuna Adiuvat Holdings, LLC and Andrew Oser, appeal the April 17, 2024 judgment entry of the Court of Common Pleas of Stark County, Ohio, granting summary judgment to Defendant-Appellee, City of Massillon, Ohio.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  Fortis Fortuna owns property on Main Street in Massillon, Ohio.  Oser is the statutory agent of Fortis Fortuna and its sole member.  The property experienced ongoing sewer line blockages that needed to be cleared approximately every six months.  In January 2023, the blockage could not be cleared.  Oser contacted the City who immediately came out and checked the upstream and downstream manholes close to the property.  The inspection revealed the City's main sewer line was flowing properly and had no issues.

{¶ 3}  Oser hired Paradigm Services to perform an exploratory dig.  Paradigm applied for a permit to dig on January 11, 2023.  When inspectors showed up, no digging was being done.  Instead, inspectors discovered digging was happening on January 18, 2023, without notice to the City.  The inspectors found the main sewer line had already been exposed to the wye connection, and there was damage to the wye connector and the main sewer line.  City crews came out and again checked the upstream and downstream manholes close to the property, revealing proper flow and no issues.

{¶ 4}  The City contracted with Paradigm to repair the main line and set a new connection for the lateral line, although the wye connection was Oser's responsibility.  The City agreed to pay $4,500 for its portion of the job.  The repairs were completed and

Paradigm sent Oser a bill for over $21,000, the balance due after the City paid its $4,500 portion.

{¶ 5}　On April 28, 2023, appellants filed a complaint against the City for breach of duty, claiming they incurred damages because the City breached its duty to inspect, repair, and maintain the City's main sewer line.

{¶ 6}　On February 15, 2024, the City filed a motion for summary judgment, claiming immunity under R.C. Ch. 2744.　Appellants filed a memorandum contra on February 22, 2024, arguing the action was a straightforward negligence case which did not fall under the City's immunity.　Appellants pointed to a 2009 report by the City, found during the discovery process, which indicated a problem in the area of appellants' blockage.　Appellants argued the City was negligent in failing to repair this known defect in the main sewer line.　By judgment entry filed April 17, 2024, the trial court found the City was immune from liability and granted summary judgment to the City.

{¶ 7}　Appellants filed an appeal with the following assignment of error:

I

{¶ 8}　"THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE CITY OF MASSILLON, OHIO."

I

{¶ 9}　Appellants claim the trial court erred in granting summary judgment to the City.　We disagree.

{¶ 10} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Regarding summary judgment, the Supreme Court stated the following in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 11} In *Leech v. Schumaker,* 2015-Ohio-4444, ¶ 13 (5th Dist.), this court explained the following:

> It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party

seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 12} As an appellate court reviewing summary judgment motions, we stand in place of the trial court and review the issues de novo, under the same standards and evidence as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 13} In granting summary judgment to the City, the trial court conducted a thorough and lengthy analysis and concluded the City was immune from liability under R.C. Ch. 2744. In *Greene County Agricultural Society v. Liming,* 89 Ohio St.3d 551, 556-557 (2000), the Supreme Court of Ohio explained the three-tier analysis required for determining if immunity applies:

R.C. Chapter 2744 sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability. First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 [defenses and immunities] becomes relevant, as the third tier of analysis.

{¶ 14} In their complaint, appellants alleged the City "breached its duty to inspect, repair, and maintain in proper working condition the main sewer line that was to provide

sewer service" to the subject property and as a direct and proximate result, they suffered expenses and damages.

{¶ 15} In its motion for summary judgment, the City argued the sewer system was properly maintained, and any damages to appellants' property was caused by the lateral sewer line that is the responsibility of the property owner. *Pfile v. City of Circleville,* 2003-Ohio-7165, ¶ 19 ("municipalities are not generally obligated to maintain and repair lateral sewer lines"); Massillon Cod.Ord. 925.16(j). The City argued R.C. Ch. 2744 provides immunity to political subdivisions, unless the claim falls within an enumerated exception. R.C. 2744.02(A)(1) states the following in pertinent part: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.01(G)(2)(d) specifically defines the "maintenance, destruction, operation, and upkeep of a sewer system" as a proprietary function.

{¶ 16} R.C. 2744.02(B) states "a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function" under five exceptions to immunity. Pertinent to this appeal is subsection (2): "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶ 17} To establish negligence, a plaintiff must demonstrate 1) the existence of a duty, 2) a breach of that duty, and 3) an injury that was proximately caused as a result of that breach. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77 (1984).

{¶ 18} The City argued the (B)(2) exception did not apply because appellants could not show negligence since they could not demonstrate a duty owed or a breach of any duty or standard of care in relation to the maintenance, operation, or upkeep of the sewer system. Attached to its motion were several exhibits, including appellants' answers to interrogatories (Defendant's Exhibit A), a sales summary of the property (Defendant's Exhibit B), and an affidavit of Jon Samsa, Collections Maintenance Supervisor for the Wastewater Treatment Department of the City of Massillon, Ohio (Defendant's Exhibit C).

{¶ 19} In their memorandum contra, appellants argued the City did not have immunity as it breached its duty to keep the sewer in good repair "when it failed to repair a known defect in the main sewer line, which defect was discovered by the City in 2009." Appellants argued this known and unrepaired defect directly and proximately caused damages to the property. Appellants attached the affidavit of Benjamin Sigler, principal operator of Paradigm Services, LLC (Exhibit 1).

{¶ 20} Oser testified he first believed the causation of the sewer backup was the failure of the wye connection. Oser depo. at 25. He admitted he was not a plumber. *Id.* He also admitted to finding out the wye connection point is the responsibility of the property owner and not the City. *Id.* His opinion of causation changed after he found out about the 2009 inspection report during discovery. *See* 2009 Pipe Graphic Report of PLR attached to McCue Deposition as Plaintiff's Exhibit 2. He testified back in 2009, the City discovered "a fault in the main sewer line to the point of the property." *Id.* at 26. He

believed "the City has indicated that that was the main, not the wye." *Id.* Paradigm's location device pinged the 2023 blockage at the 2009 "faulty spot." *Id.* Mr. Sigler averred in his investigation of the blockage, "the wye connection had been compromised because it had broken off of the main sewer line." Sigler aff. at ¶ 4. Mr. Sigler opined "this break in the main sewer line had been an ongoing problem because a large amount of soil around the area of the break had washed away leaving a void with large amounts of raw sewage in the area." *Id.* at ¶ 5. He further opined a sinkhole would have developed in the roadway. *Id.* He averred Paradigm did not observe a broken lateral line, did "observe dirt and debris entering the main sewer line in the area of the main sewer line breakage," and did not damage or break any of the sewer lines or connections involved in the repair. *Id.* at ¶ 6-8. An estimate for repairs from Paradigm indicated service to "[d]ig down to city main and repair a section to add a wye for a lateral. Original wye is broken." *See* Paradigm Estimate attached to McCue Deposition as Plaintiff's Exhibit 7.

{¶ 21} Gregory McCue, the City's assistant city engineer, was cross-examined on the 2009 report. Contrary to Oser's assertions, McCue testified the report and accompanying pictures indicated a possible break "somewhere in the lateral on the residential side." McCue depo. at 29. He explained the lateral "is the piece that connects to the house, and then including the wye connects to the main of the sewer." *Id.* at 28. He stated the residential homeowner is responsible for the lateral line. *Id.* at 29. A 2021 City ordinance states: "The property owner shall have the responsibility for maintenance and repair of the service lateral from the main including the wye to the building structure." Massillon Cod.Ord. 925.16(j). There is no evidence to establish how the ordinance read in 2009, but McCue testified "in my experience with the City in 34 years, it's always been

the property owner's been responsible for the maintenance of the wye and the lateral." McCue depo. at 33. The City did not have a duty to repair a fault in the lateral line. *Id.* at 43.

{¶ 22} When Paradigm excavated the lateral, City inspectors observed damage to the main line. *Id.* at 37-38, 44; *see* Statements of Jeff King and Ken Reed attached to McCue Deposition as Plaintiff's Exhibits 5 and 6. Because the City was not notified of the dig as required, the City inspectors arrived after the dig and could not determine when and how the main line was damaged. *Id.* at 38, 40, 56, 61; Samsa aff. at ¶ 8-9. McCue agreed a break in the main line could allow dirt, stones, and rocks to enter the sewer line, but he did not agree those items could then be deposited in Oser's lateral line. *Id.* at 44-45. In his experience, he has never seen those items go downstream and lodge in somebody's lateral. *Id.* at 45. The wye faces downstream and would prevent any debris going into the lateral from the main sewer line. *Id.* at 56. It is unknown if the property owner in 2009 was informed of a possible defect in the lateral line. *Id.* at 33-34. Oser purchased the property in September 2019 as a rental/investment property sight unseen without an inspection and without searching any public records or having any contact with any of the previous property owners. Oser depo. at 37-38, 51; Defendant's Exhibit B attached to Defendant's February 15, 2024 Motion for Summary Judgment; Answer to Interrogatory No. 14. Appellants make an argument about a "suggested" or "potential" sinkhole at the wye connection, but there is no evidence of a sinkhole caused by a problem with the main sewer line. Any problem caused by the wye connection is still the responsibility of the property owner. Massillon Cod.Ord. 925.16(j); Samsa aff. at ¶ 12.

{¶ 23} Right after Oser called the City and reported a sewer backup, city employees checked the main sewer line in the area and did not find any problems with the flow. Samsa aff. at ¶ 5. Again, right after the Paradigm excavation revealed damage to the wye connector and the main sewer line, city employees checked the main sewer line and the flow was moving properly. *Id.* at ¶ 10. There is no evidence in the record that the city employees were negligent in their duties to inspect the main sewer line. As a consequence, we concur with the trial court conclusion: "Plaintiffs cannot prove that any damages were caused by the negligent performance of acts by the City's employees with respect to proprietary functions of the political subdivision. As such, the Court finds that the exception to immunity found in R.C. 2744.02(B)(2) does not apply and that the City is immune from liability in this matter." April 17, 2024 Judgment Entry at 9.

{¶ 24} Instead of stopping the analysis at this point, the trial court continued to the third tier, determining whether a defense applied to establish nonliability under R.C. 2744.03. The trial court looked to subsection (A)(5) which states:

> The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 25} The trial court found any action or inaction by City employees was an exercise of judgment or discretion as to the routine maintenance or operation of the sewer system. The City checked the main sewer line and found proper flow. In relation to the 2009 faulty point, the City used its discretion to not clear the blockage as it existed in the lateral line that was the property owner's responsibility. The trial court found no evidence was "presented that any judgment or discretion by any City employee in this case was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." April 17, 2024 Judgment Entry at 10.

{¶ 26} Based upon our de novo review of the evidence presented under a summary judgment standard, we concur with the trial court's decision and find no genuine issues of material fact to exist in this case. Appellants have not shown how the lateral line and the wye connector were the City's responsibility. *See Kaczor v. City of Bellaire,* 1998 WL 404189, *4 (7th Dist. July 13, 2001) ("It was Appellant's burden to show that the line was either not a lateral or that its ownership and/or maintenance was in some other way Appellee's responsibility").

{¶ 27} Upon review, we find the trial court did not err in granting summary judgment to the City.

{¶ 28} The sole assignment of error is denied.

{¶ 29} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By King, J.

Wise, P.J. and

Baldwin, J. concur.